IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**April L. Anglin**  **Plaintiff**

**v.**  **CASE NO. 3:14CV00046 JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**  **Defendant**

<u>**ORDER AFFIRMING THE COMMISSIONER**</u>

April L. Anglin seeks judicial review of the denial of her application for supplemental security income (SSI). Anglin applied for SSI on October 26, 2011, with an alleged onset date of January 10, 2010.[1] SSI, however, is not payable prior to the date of application. Therefore, Anglin must prove she was disabled as of, or after, applying for disability benefits;[2] that is, she must prove she was disabled as of, or after, October 26, 2011. Anglin previously applied for SSI and disability insurance benefits (DIB) in 2007.[3] These claims were denied and the case dismissed in the U.S. District Court for the Eastern District of Arkansas in August 2011.[4] Anglin last worked in January 2002 as a manager at Dollar General.[5] Anglin bases disability on herniated disc, bone degeneration, depression, anxiety, tremors in right arm and headaches.[6]

**The Commissioner's decision.** The Commissioner's ALJ determined that Anglin did not

---

[1] SSA record at p. 193.

[2] 20 C.F.R. § 416.335; *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

[3] SSA record at pp. 39 & 61.

[4] *Id.* at p. 60.

[5] *Id.* at p. 81.

[6] *Id.* at p. 213.

engage in substantial gainful activity since the application date.[7] Anglin has severe impairments - disorder of back, carpal tunnel syndrome, muscle pain in right arm, hypertension, anxiety, mood disorder, personality disorder, somatoform disorder and depressive disorder.[8] None of Anglin's severe impairments meet the Listings.[9] Anglin has the residual functional capacity to lift-carry and push-pull up to 20 lbs occasionally and 10 lbs frequently, with the ability to sit 6 hours total in an 8-hour workday and the ability to stand and/or walk 6 hours total in an 8 hour workday.[10] She can occasionally stoop and crouch, but should never climb ladders; is able to understand, retain, and carry out simple instructions and make simple work-related decisions; can perform work where the complexity of tasks is learned and performed by rote, with few variables, and little judgment; can only work in an environment with few, if any, work place changes; and is able to perform work where interpersonal contact is incidental to work performed and where the supervision required is simple, direct and concrete.[11] The ALJ held that Anglin cannot perform any past relevant work,[12] but can perform the positions of photo copy machine operator, call operator and information clerk, positions identified by the vocational expert (VE) as available in

---

[7]*Id.* at p. 41.

[8]*Id.*

[9]*Id.* at p. 42.

[10]*Id.* at p. 43.

[11]*Id.* at pp. 43-44.

[12]*Id.* at p. 52.

the state, regional and national economies.[13] Anglin's application was denied.[14]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[15] Anglin filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[16]

**Anglin's allegations.** Anglin maintains that the ALJ's denial of disability benefits should be reversed because (1) the credibility determination is not supported by substantial evidence; (2) the RFC is not supported by substantial evidence; and (3) the ALJ erred in determining that Anglin can perform the jobs of call operator and information clerk. The ALJ's decision is supported by substantial evidence and, even if legal error occurred, it was harmless.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[17] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the determination that Anglin

---

[13]*Id.* at p. 53.

[14]*Id.*

[15]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[16]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[17]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

is not disabled.[18]

**Credibility.** Anglin asserts that the ALJ's credibility determination is not supported by substantial evidence. This argument is not persuasive.

An ALJ must evaluate the claimant's credibility because subjective complaints play a role in determining the claimant's ability to work.[19] To evaluate Anglin's credibility, the ALJ followed the required two-step process and considered the required factors under *Polaski*,[16] so the dispositive question is whether substantial evidence supports the credibility evaluation. The ALJ's determination that Anglin's subjective complaints of pain and limitations were not credible to the extent that they conflict with the assigned RFC is supported by substantial evidence.

The objective medical evidence supports the ALJ's credibility determination because the observations of Anglin's physicians and the diagnostic testing fail to suggest disabling pain or symptoms.[17] In 2008, Anglin underwent a cervical fusion at C5-C8.[18] In late 2009, Anglin returned to her treating physician, complaining of left leg pain.[19] An MRI was ordered, and her

---

[18]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[19]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[16]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[17]The medical evidence in this case includes treatment records that precede the relevant time period, but those records provide relevant background for Anglin's claim. The relevant time period is from October 26, 2011 - the date of Anglin's SSI application - to April 15, 2013 - the day of the challenged decision.

[18]SSA record at p. 313.

[19]*Id.*

physician noted that there was a protruding disc to the left at the L4-L5 level.[20] The physician opined that the protruding disc might be causing impingement on the L5 root.[21] Anglin was referred to physical therapy, and instructed to return if her symptoms worsened or did not respond to physical therapy.[22] Anglin did not attend physical therapy and did not seek further medical treatment until approximately six months later when she complained of low back pain and leg numbness.[23] Anglin was referred back to the physician who conducted her cervical fusion, MRIs were ordered and the treating physician recommended physical therapy.[24] Three MRIs were conducted - a cervical spine MRI, thoracic spine MRI and lumbar spine MRI.[25] Each test revealed only minimal, slight or tiny defects in Anglin's spine.[26] They did not reveal anything that would account for disabling back pain. Indeed, Anglin did not seek treatment again for her back until over a year and a half later. She also never sought any physical therapy.

In October 2011, five days prior to the SSI application, Anglin complained of mid-lower back pain, pain and numbness in her left arm and swelling in both ankles and feet.[27] Her treating physician assessed edema and unspecified neuralgia, neuritis and radiculitis and ordered an

---

[20]*Id.*

[21]*Id.*

[22]*Id.*

[23]*Id.* at p. 306.

[24]*Id.* at p. 307.

[25]*Id.* at pp. 316, 318 & 320.

[26]*Id.*

[27]*Id.* at p. 344.

electromyograph/nerve conduction study (EMG/NCS).[28] The study revealed only mild left carpal tunnel syndrome.[29] Anglin was referred to an orthopaedist, but never scheduled an appointment.[30] Around the same time, Anglin sought treatment after a fall.[31] She complained of pain to her right lower leg, lower back, neck and back of head.[32] She was prescribed a muscle relaxer and was recommended an over-the-counter pain medication.[33] Following these appointments, it would be another seven months until Anglin would seek additional treatment for any symptoms relating to her back or extremities.

In July 2012, Anglin presented to her treating physician with swelling in her left foot.[34] Her physician advised her to avoid a high salt diet and to increase water intake.[35] Anglin followed up approximately a month later and was prescribed Lasix and a potassium chloride tablet.[36] She was again told to avoid a high salt diet and to increase her water intake.[37] If there was no improvement, additional testing would need to be done.[38] A subsequent progress note

---

[28]*Id.* at pp. 344-345.

[29]*Id.* at p. 361.

[30]*Id.*

[31]*Id.* at p. 359.

[32]*Id.*

[33]*Id.*

[34]*Id.* at p. 420.

[35]*Id.* at p. 422.

[36]*Id.* at p. 419.

[37]*Id.*

[38]*Id.*

indicates that Anglin had no edema in her extremities and exhibited a full range of motion.[39]

With respect to Anglin's back pain and impairments in her extremities, the records establish that she sought only episodic treatment and did not follow the recommended course of treatment. This weighs against her allegations of disabling pain.[40] Although Anglin maintains that she did not seek treatment due to financial concerns, the record establishes - as the ALJ pointed out - that Anglin is financially able to maintain a smoking habit.[41] This weighs against her credibility.[42] Anglin argues that her cigarettes are provided by family members, and, therefore, her smoking does not reflect anything with respect to her finances. The fact remains, however, that even if her smoking habit is supported by family members, it represents money that could be spent on medical care if Anglin so desired.

Providing further support for the ALJ's credibility determination is the fact that the records lack language suggesting that Anglin suffered disabling pain. In progress notes addressing other medical issues, Anglin's treating physicians noted that she denied back pain, exhibited no acute distress and could take care of many of her needs - getting out of bed,

---

[39]*Id.* at p. 16.

[40]*See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment.); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

[41]SSA record at pp. 344, 359, 418 & 421.

[42]*See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain medication.")

dressing, making meals, going shopping - by herself.[43] The medical evidence also establishes that Anglin received only conservative treatment for her back and extremity impairments. Following her surgery, Anglin was treated with (or recommended) physical therapy, a muscle relaxer and over-the-counter medications.[44] For her edema, she was prescribed a low salt diet, greater water intake, Lasix and a potassium chloride tablet.[45] Such conservative treatment weighs against her allegations of disabling pain and symptoms.[46]

Although the records establish that Anglin consistently sought treatment for her mental health issues, the progress notes fail to support her allegations that her mental impairments are disabling. It appears that most of the progress notes from Anglin's treating psychiatrist are for "medication management" appointments.[47] Although some of the notes indicate that Anglin is suffering from depression and anxiety,[48] there is little to suggest that her symptoms are disabling. Further, the records establish that Anglin's prescription medications remained relatively unchanged throughout her treatment.

Further, in a number of medical records from other physicians, it is noted that Anglin's mental health is anything but disabling. In March 2010, Anglin's treating physician observed that Anglin's anxiety and depression were doing well on the regimen prescribed by her treating

---

[43]SSA record at pp. 303, 418 & 421-422.

[44]*Id.* at pp. 307 & 313.

[45]*Id.* at pp. 419 & 422.

[46]*See Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[47]SSA record at pp. 336, 338-341, 369 & 425.

[48]*Id.* at pp. 338-340, 369 & 425.

psychiatrist.[49] The following month it was noted that Anglin denied any depression, anxiety or agitation.[50] An October 2011 note indicates that Anglin suffered minimal depression, was under no acute distress and was pleasant.[51] The same observations were made in July 2012.[52]

The assessments completed by state physicians also weigh against Anglin's credibility. In February 2012, a state physician determined that Anglin's physical RFC is nonsevere.[53] This assessment was affirmed by a second state physician.[54] A Mental Diagnostic Evaluation was completed in November 2011 in which a state physician concluded that Anglin

> is able to communicate and interact in a socially adequate manner. . . appears to have the capacity to communicate in an intelligible and effective manner . . . is likely to be able to cope with the typical mental demands of basic work-like tasks . . . appears to have the ability to attend and sustain concentration on basic tasks . . . appear[s] to have the capacity to sustain persistence in completing tasks [and] . . . does appear to have the capacity to complete work-like tasks within an acceptable timeframe unless the tasks exacerbate her pain issues.[55]

In a January 2012 Mental Residual Functional Capacity Assessment, a state physician determined that Anglin is moderately limited in six of the twenty mental activities listed.[56] In the

---

[49]*Id.* at p. 307.

[50]*Id.* at pp. 303-304.

[51]*Id.* at p. 344.

[52]*Id.* at pp. 420 & 422.

[53]*Id.* at p. 397.

[54]*Id.* at p. 400.

[55]*Id.* at pp. 354-355.

[56]*Id.* at pp. 377-378.

remaining fourteen, she was not significantly limited.[57] The physician stated, "[Anglin] is felt capable of basic work if so motivated. [Anglin] is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work, complexity of tasks is learned and performed by rote, few variables, little judgment: supervision required is simple, direct and concrete."[58] This opinion was affirmed by a second state physician in March 2012.[59]

Although Anglin places great emphasis on the opinion of her treating psychiatrist in a February 2013 Medical Source Statement,[60] the ALJ declined to give the opinion controlling weight. Anglin's treating psychiatrist opined that Anglin was markedly to extremely limited in multiple areas of understanding and memory, sustained concentration and persistence, social interaction and adaptation.[61] In the decision, the ALJ found that the opinion was "out of proportion" with other substantial evidence and was based on "subjective complaints."[62] This decision is supported by substantial evidence. As established above, the progress notes from Anglin's treating psychiatrist appear to accompany appointments for "medication management." There is little contained in them to support a conclusion that Anglin is markedly or extremely limited in the areas assessed by the treating psychiatrist. Progress notes from other physicians indicate that Anglin's mental health is not disabling. Further, assessments from state physicians

---

[57]*Id.*

[58]*Id.* at p. 379.

[59]*Id.* at p. 404.

[60]*Id.* at p. 429.

[61]*Id.* at pp. 429-430.

[62]*Id.* at p. 51.

10

fail to support the conclusions contained in the Medical Source Statement. It is also interesting to note that in his remarks, the treating psychiatrist stated that Anglin "hasn't been able to function well enough to keep custody of her son," and her "[m]ood swings [are] so severe that she pulled [a] knife on boyfriend in past."[63] At the hearing Anglin testified that her sons are now adults and she was never deemed mentally unstable to have custody of them.[64] With respect to the knife incident, Anglin testified she grabbed the knife when her boyfriend was drunk and "coming after" her.[65]

A reasonable mind would accept the evidence as adequate to support the ALJ's credibility determination. The credibility determination is supported by substantial evidence.

**RFC**. Anglin argues that the RFC is not supported by substantial evidence. The evidence cited above supporting the credibility determination also supports the RFC determination. A reasonable mind would accept this evidence as adequate to support the ALJ's RFC. The RFC is supported by substantial evidence.

**Work available.** Anglin argues that two of the jobs identified by the VE - call operator and information clerk - require significant interpersonal contact and therefore conflict with the hypothetical presented by the ALJ. Accordingly, Anglin asserts, it was error for the ALJ to hold that she can perform such positions. Anglin's argument is without merit because if an error was committed it was harmless. In addition to the positions of call operator and information clerk, the ALJ determined that Anglin can perform the position of photo copy machine operator.

---

[63]*Id.* at p. 430.

[64]*Id.* at p. 89.

[65]*Id.* at pp. 89-90.

Therefore, even absent the alleged error, the ALJ would have reached the same conclusion and denied Anglin's SSI application.

**Conclusion.** Substantial evidence supports the ALJ's decision. If any legal error occurred, it was harmless. For these reasons, the court DENIES Anglin's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 23rd day of January, 2015.

_____
UNITED STATES MAGISTRATE JUDGE